GEORGE VAN NOY, Respondent, *v.* ISAAC FAILING et al.,
Appellant.

(Argued October 3, 1878; decided November 12, 1878.)

THIS action was brought upon the following contract :
" This agreement, made this 26th day of February, A. D.
1868, between William Norman, George Van Noy and James
McElheny, of the first part, and Isaac Failing and William
Hunt, of the second part, witnesseth, that the said parties of
the first part do hereby severally make, constitute and
appoint the said parties of the second part, and each of them,
jointly and severally, their true and lawful attorneys irre-
vocable, with full power of substitution to sell and convey
all the right, title and interest of each and every of the
parties of the first part in and to certain letters patent to a
certain patent self-acting brake,   *   *   *   and the said
parties of the first part shall execute and deliver to the said
Isaac Failing and William Hunt proper power or powers of
attorney for the purpose aforesaid ; and the said parties of
the first part further agree to transfer to said parties of the
second part, all the right they or either of them have under
and by virtue of any and all powers of attorney, or other
instruments, from John and William Baker, who each claim
to own the one undivided one-sixth part of such letters
patent in and to the counties aforesaid, and will use their
best exertions and endeavor to procure from the said Baker
such further power or authority to the said parties of the
second part as may be proper, to enable said parties of the
second part to sell the patent right aforesaid in and for the

counties aforesaid ; and the said parties of the second part agree that they will, within a reasonable time, hereafter commence and will diligently prosecute the business of selling the right to the counties aforesaid ; that within eighteen months from the date hereof the said parties of the second part will pay to the parties of the first part, severally, the following sums, viz. : To the said William Norman the sum of $250 and interest thereon from the 17th day of August, 1866 ; to the said George Van Noy the sum of $250 and interest thereon from the 18th day of August, 1866 ; and to the said James McElheny the sum of $262.50 and interest thereon from the 24th day of August, 1866 ; and the parties of the second part further agree that they will bear and pay their own expenses in and about selling such letters patent in the territory aforesaid, unless they shall realize from the sales aforesaid sufficient to pay the above named sums and interest aforesaid, and after deducting from such sales such sums and interest thereon, then the surplus of the proceeds of such sales shall be applied, so far as necessary, to pay the expenses of making such sales, and then the surplus, if any, shall be paid as follows : To the said William Norman $250 and interest thereon from the 17th day of August, 1866 ; to the said George Van Noy $250 and interest thereon from the 18th day of August, 1866, and to the said James McElheny $262.50 and interest thereon from the 24th day of August, 1866 ; and if such surplus be insufficient to pay the sums last above named in full, then the same shall be paid *pro rata*, share and share alike, in proportion to the respective amounts and interests of the parties ; and it is further agreed, that the surplus, if any there shall be after paying the above sums and interests, shall belong to the parties of the second part as their compensation for selling the said patent right in the counties aforesaid ; and it is further agreed that, in case the said parties of the second part shall sell the said territory or any part thereof and shall take in payment any promissory, negotiable note or other personal property, then, and in that case, the said parties of the second part may deliver such property to the said parties

of the first part at Cuba, New York; and the said parties of the first part shall accept, in payment of the said sums, notes and other merchantable personal property; such other personal property to be received at its cash market value at Cuba, N. Y., at the time of its delivery, and the notes so to be received in payment shall be negotiable notes, due in not longer than fifteen months from their date, provided that the said parties of the first part shall not be bound to accept any note for a less amount than fifty dollars, nor any note due in less than thirty days from the time of the delivery thereof to the parties of the first part; and it is further provided that the said parties of the second part shall pay to the parties of the first part all the moneys they shall receive on the sales of the patent right aforesaid in and for the territory aforesaid, after deducting the actual expenses of making such sales, within a reasonable time after the receipt of such moneys, to apply on the sums hereinbefore stipulated to be paid; and the parties of the second part further agree, that they will, in all things, conduct and properly and diligently transact the business in selling the patent right in the counties aforesaid, and in taking notes and property in payment thereof; and the parties of the first part agree, that they or some one of them now hold a power of attorney from said Baker to sell said patent right in the territory aforesaid, with a power of substitution therein; and the parties of the first part agree to loan to the parties of the second part a two-horse wagon with a brake thereon, now owned by them, to enable said parties of the second part to make such sales, such loan to be for not longer than four months."

Plaintiff, as assignee of the parties of the first part, claimed to recover the first payment specified in the contract, and asked the referee to decide that they were, by the terms of the contract, to be paid in cash. Defendant offered to prove in substance that they made sales, but not for cash, receiving thereon promissory notes, and that within the eighteen months specified they tendered to plaintiff and his assignors notes of the character and description specified in the contract of an

amount sufficient to pay the sums claimed. The evidence was objected to, and objection sustained, the referee *holding* that, by the terms of the contract, construed in the light of the surrounding circumstances, those payments were to be made in cash, and that the "said sums," which the parties of the first part stipulated to receive in notes or property, only applied to the sums secondly specified and not to the first three sums. These circumstances, as found by him, were, in substance, that plaintiff and his assignors had, prior to the making of the contract, purchased of defendant Failing and two other persons, interests in the patent right specified in the contract, plaintiff and Norman each paying $500, and McElheny paying $525 ; that they had severally brought actions against the vendors for alleged fraud in the sale, which suits were settled and discontinued in consideration of the execution of the contract in suit. *Held*, that the ruling of the referee was error ; that the grammatical import of the words "said sums " covered all the six sums specified ; that by the contract defendants were impliedly authorized to sell for notes or property "any part" of the territory, and as it is expressly stated that they were to realize from the sales, if possible, the first sums, this indicated that the subsequent privilege to pay in notes, included all the sums to be realized from sales, and that they were authorized so to pay the first sums in case no cash was realized.

Also, *held*, that the extrinsic circumstances shown throw no light upon the meaning of the contract ; they did not authorize an inference that there was a fraud in the sale of the rights under the patent, as they were as consistent with the idea that defendants had confidence in the value of the patent and of their ability to realize by sales all that had been paid by the vendees; that the fact of the suits and their settlement in no way indicated that the sums first mentioned, which were secured absolutely, were to be paid in cash and not in notes.

*H. E. Sickels* for appellants.

*Henry Smith* for respondents.

HAND, J., reads for reversal and new trial.

All concur, except CHURCH. Ch. J., not voting; MILLER and EARL, JJ., absent.

Judgment reversed.